UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Case No. 1:06-CR-65 WCL |
| | ) |
| ISAAC J. CARLISLE III | ) |
| | ) |

**OPINION AND ORDER**

This matter is before the Court on Defendant, Isaac Carlisle's ("Defendant's" or "Carlisle's"), "Motion To Suppress" filed on January 22, 2007. On February 28, 2007, the court issued an Opinion and Order denying Carlisle's request for a *Franks* hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). In addition, the Court concluded that probable cause existed for issuance of the warrant and that the warrant "appropriately described the items to be seized." Order, p.1. Thereafter, on April 19, 2007, an evidentiary hearing was held on the remaining issues raised in the Defendant's Motion to Suppress. The parties filed post-hearing briefs, the last of which was filed on June 18, 2007. For the following reasons, the Defendant's Motion to Suppress will be DENIED.

**DISCUSSION**

On December 13, 2006, a grand jury returned a two count indictment against Defendant Carlisle. Count 1 charges that on or about November 1, 2006, the Defendant knowingly and intentionally distributed crack in violation of 21 U.S.C. §841(a)(1). Count 2 charges that on or about November 15, 2006, Defendant Carlisle knowingly and intentionally possessed with intent to distribute crack also in violation of 21 U.S.C. §841(a)(1). The indictment followed a search (pursuant to a warrant) of the residence at 565 Candlelite Court, Fort Wayne, Indiana where police

1

sought evidence of drug activity. The present motion to suppress relates to that search with the Defendant contending that the officers executing the warrant exceeded the scope of the warrant.

The search warrant in question was issued by an Allen County Superior Court Judge. That warrant was based upon a probable cause affidavit submitted by Lieutenant Arthur Barile ("Lt. Barile"), a member of the Allen County Sheriff's Department and authorized a search of the residence at 565 Candlelite Court for "cocaine and derivatives thereof, United States Currency, firearms and/or weapons, records of drug transactions and/or other financial information, which constitutes evidence of alleged drug transactions and illegal possession of said controlled substances in or about the above described building." Search Warrant, at 1.  This court has previously held that the search warrant was supported by probable cause, Order dated February 28, 2007, at p. 1, and thus, this issue has been resolved unfavorably to Carlisle.

At the evidentiary hearing, the parties stipulated the following facts into the record:

(1)  On November 15, 2006, officers and detectives with the Allen County Police Department executed a state search warrant at 565 Candlelite Court, Fort Wayne, Allen County, Indiana,

(2)  Prior to the execution of the search warrant on this date, detectives conducted surveillance of the residence, observing Sondra Hides ("Hides") and a female child leave the apartment at approximately 8:26 a.m.

(3)  Hides and the child departed the area in a maroon Lexus, and Hides took the child to a local elementary school.

(4)  After dropping the child off at school, Hides returned to the area of the apartment in the Lexus and was stopped by Officer Jamie Gasvoda at approximately 8:50 a.m., with Officer Gasvoda wearing full police uniform and driving a marked police vehicle.

(5)  After the traffic stop, Hides was arrested for Dealing in Cocaine based upon an October 26, 2006 controlled buy, with the facts of this buy mentioned in the search warrant affidavit.

2

(6)   After the arrest of Hides, officers and detectives used her keys to gain entry to the relevant apartment, 565 Candlelite Court, and Hides was brought to the apartment and informed of the impending search warrant execution.

(7)   After entering the apartment, detectives located Isaac J. Carlisle III ("Carlisle") asleep in the upstairs master bedroom; he was searched and placed under arrest for dealing in cocaine based upon the prior controlled buy on November 1, 2006, with the facts of this buy also mentioned in the search warrant affidavit.

(8)   Hides and Carlisle were brought to the apartment's living room, which was downstairs, and both were allowed to sit there during the search warrant's execution.

(9)   There is a factual dispute regarding when detectives read the search warrant, with Hides and Carlisle contending that the search was commenced and ongoing long before the warrant was read to them in the living room.

(10)  During the search warrant's execution, Detective Brian Gore located a safe in a walk-in closet in the master bedroom. Detective Gore observed a key to be in the safe but noticed that a combination was necessary to open it. Detective Gore then spoke with Carlisle, and Carlisle provided the combination to the safe.

(11)  There is a factual dispute regarding the exact nature of the conversation that led to Carlisle providing the combination to the safe.

(12)  Inside the safe, Detective Gore found a number of evidentiary items, including: Carlisle's social security card, a metal spoon with white residue, a razor knife with white residue, a scale, three used baggies, $1,935 (among which was some of the pre-recorded buy money from the October 26, 2006 controlled buy), a baggie containing 41.31 grams of cocaine, a baggie containing 23.89 grams of cocaine, a baggie containing 1.85 grams of cocaine, and a baggie containing 2.85 grams of cocaine base "crack." The weights provided for the drugs are the net substance weights from the laboratory examination.

(13)  Other detectives located additional evidentiary items in other areas of the apartment, including: plastic bags, a box of baking soda with a spoon inside it, a box of rubber gloves, a cell phone, Carlisle's credit cards, and miscellaneous paperwork identifying the residents. The propriety of seizing these remaining evidentiary items is not in dispute.

(14)  According to the lease agreement, the relevant apartment was leased by Carlisle and "Sondra Jones," with Jones being Hides's maiden name. Hides and Carlisle signed a twelve-month lease for the relevant apartment, with the lease starting on 07/19/2006. They listed two children as occupants, and neither of the children were present for the execution of the search warrant on 11/15/2006.

In their stipulation, the parties also agree that two factual issues exist in this case, although there is disagreement between them that the factual disputes are relevant to the legal issues in the case. The two factual issues are: (1) when and if the detectives read the search warrant and Miranda rights to Hides and Carlisle; and (2) the exact nature of the conversation that led to Carlisle providing the safe's combination. As explained more fully below, because the court agrees with the Government's position that the search warrant authorized the opening of the safe, the court concludes that the factual disputes above are irrelevant to the analysis.[1]

## DISCUSSION

The Fourth Amendment protects "against unreasonable searches and seizures." U.S. Const. Amend. IV. As part of this protection the Fourth Amendment requires that warrants describe the "place to be searched" with particularity and "particularly describ[e] the ... things to be seized." *Id.* "This requirement precludes the issuance of a warrant that permits a 'general, exploratory

---

[1] The officers testified credibly at the evidentiary hearing that both Hides and Carlisle were read the search warrant and their rights at the time they were seated in the living room of their apartment and prior to conducting the search of the residence pursuant to the warrant. (Testimony of Officer McDonald, at 19-20; Testimony of Officer Cain, at p.27). Carlisle testified to a different series of events, namely that the officers rummaged through the house for 15-20 minutes prior to reading the search warrant to him and that it was read to him only after he asked twice that it be read to him. (Carlisle Test. at pp. 37-38). On cross-examination, however, Carlisle told the Government that when he sat down on the couch, the officers stated they had a search warrant (Carlisle Test. at p. 42). Hides testified that "there was a short time before [the officers] read it" (Hides Testimony at 47) and testified further that "after entering into the apartment, maybe ten minutes, five, ten minutes, something like that," lapsed before it was read. *Id.*

On the whole, the court finds Carlisle's testimony and his demeanor on the witness stand incredible especially in light of Hides' statement which is fairly consistent with that of the officers that the search warrant was read within a few minutes of Hides and Carlisle being situated on the couch in the living room. Moreover, the fact that Carlisle acknowledges being told of the search warrant when he was seated on the couch also undermines the credibility of his statements that he had to ask repeatedly to have it read to him. It is the more likely and credible scenario that, as the officers testified, they informed Carlisle of the search warrant and read it to him at the same time, that time being when the Carlisle and Hides were initially seated on the couch. Accordingly, the court finds in favor of the Government on this factual issue.

4

rummaging in a person's belongings', and thereby ensures that the scope of a search will be confined to evidence relating to a specific crime that is supported by probable cause." *United States v. Vitek Supply Corp.*, 144 F.3d 476, 480 (7th Cir. 1998) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971)). To satisfy the demand for particularity, a warrant "must describe the objects of the search with reasonable specificity, but need not be elaborately detailed." *United States v. Shoffner*, 826 F.2d 619, 630 (7th Cir.1987) (quoting *United States v. Reed*, 726 F.2d 339, 342 (7th Cir.1984)).

The thrust of the Defendant's contention here is that the officers exceeded the scope of the search warrant by opening of the safe.[2] In response, the Government asserts, based upon *United States v. Ross*, 456 U.S. 798, 820-23 (1982) and *United States v. Mancari*, 463 F.3d 590, 596 (7th Cir. 2006), that the search warrant authorized officers to open all containers within the apartment in which the items sought under the warrant might be found.

In this case, the objects to be seized, i.e., evidence of drug activity, were described in the search warrant as follows "cocaine and derivatives thereof, United States Currency, firearms and/or weapons, records of drug transactions and/or other financial information, which constitutes evidence of alleged drug transactions and illegal possession of said controlled substances in or about the above described building." Once these objects were described in a search warrant, the objects define the reasonable scope of the search. *Platteville Area Apartment Ass'n v. City of Platteville,* 179 F.3d 574, 579 (7th Cir. 1999). As then-Chief Judge Posner wrote:

> Even if there were no constitutional requirement of particular description, or if "seizure" were so narrowly defined as to be irrelevant to most searches, a valid warrant would have to specify the object of the search, and that specification would

---

[2] Alternatively, the defendant argues that any consent obtained from him to open the safe was not voluntary. However, because the court finds that the warrant permitted the officers to open the safe, the court needn't proceed to defendant's alternative argument.

5

> operate to particularize the scope of the search. For the object determines the reasonable scope of the search, and all searches, to pass muster under the Fourth Amendment, must be reasonable. If you are looking for an adult elephant, searching for it in a chest of drawers is not reasonable. The principle that this example illustrates is that a search for a given type of evidence or contraband implies a limitation of the parts of the premises that may be searched.

*Id.* at 579.

Under the above analysis, the court reiterates that although the warrant here is broad, it is not impermissibly so. The items the search warrant sought to uncover included hallmarks of drug crimes and clearly these items could have been concealed throughout various rooms in the Defendant's residence and inside a safe. It matters little that officers had to obtain both a key and a combination to open the safe. The Supreme Court explained in *United States v. Ross,* 456 U.S. 798 (1982):

> A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search. Thus, a warrant that authorizes an officer to search a home for illegal weapons also provides authority to open closets, chests, drawers, and containers in which the weapon might be found.

*Id.* at 820-21. Accordingly, the search properly extended to the contents of the safe.[3]  *Id.*; *United*

---

[3] Carlisle testified that the officers "threatened" to drill the safe if he did not provide the combination and thus, he did not voluntarily consent to the opening of the safe. It is clear from the record, however, that the officers did not seek consent from Carlisle to open the safe because, as one officer testified, "I did not ask for consent. I had a valid search warrant in my hand." (Cain Test. at p. 32). As set out in the body of the opinion, consent to search the safe was not required because the opening of the safe was justified by the search warrant. The officers, however, testified that Carlisle was asked to provide the combination to the safe in an effort to avoid destroying the safe. Both Carlisle and the officers consistently testified that no officer used a threatening tone of voice, had a gun drawn, or showed any sign of force when asking for the combination. The court concludes from the record that the officers did truthfully inform Carlisle that they would have to drill the safe if he did not provide the combination. The undisputed evidence at the suppression hearing was that if the combination was not provided, the only method of opening the safe was by drilling through the safe or by contacting the safe company for them to force open the safe.

Nevertheless, Carlisle also argues that the police did not need to open the safe onsite and could

*States v. Jackson,* 120 F.3d 1226, 1228-29 (11th Cir. 1997) ("[A] warrant to search a specific area for a certain class of things authorizes government agents to break open locked containers which may contain the objects of the search."); *United States v. Snow,* 919 F.2d 1458, 1461 (10th Cir.1990) ("The locked safe was a likely source for the specified documents and could therefore be opened."); *United States v. Wright,* 704 F.2d 420, (8th Cir. 1983) (warrant obtained by police for home permitted search of safe); *United States v, Morris,* 647 F.2d 568, (5th Cir, 1981) (search warrant for residence authorized search of locked jewelry box); *United States v. Becker,* 929 F.2d 442 (9th Cir, 1991), *cert. denied,* 502 U.S. 862 (1991) (agents used a jackhammer to remove a concrete slab while executing a search warrant).

Nevertheless, Carlisle contends that the officers "could have" or "should have" seized the safe and obtained a second warrant to open it.  This argument, however, leads to defendant's downfall under the concept of inevitable discovery.  Even if the safe had not been opened, Carlisle seemingly concedes that officers lawfully located the safe in the closet during the execution of the warrant and that if Carlisle had refused to provide the combination to the safe, it would have been confiscated  and inventoried along with the other drug-related items found in the home, and law enforcement personnel at that time could have obtained a second search warrant to open the safe.  Accordingly, the "inevitable discovery" exception is applicable. *Nix v. Williams*, 467 U.S. 431 (1984).  For this additional reason, the Motion to Suppress the items found inside the safe is

---

have removed it from the premises since he and Hides were under arrest.  The Supreme Court , however, has indicated its preference that occupants be present at the location of the search because under normal circumstances, "self-interest may induce them to open locked doors or locked containers to avoid the use of force that is not only damaging to property but may also delay the completion of the task at hand." *Michigan v. Summers,* 452 U.S. 692, 702-703 (1981).  In light of Carlisle's repeated statements that he did not want officers to destroy his property, the officers acted reasonably by first seeking the combination from Carlisle before resorting to other methods of opening the safe.

DENIED.

## **CONCLUSION**

Based on the foregoing, the Defendant's Motion to Suppress is DENIED.

Entered: This 26th day of June, 2007

s/ William C. Lee
United States District Court